IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| TIMOTHY SOUDER, | ) |
|         Plaintiff, | ) |
| v. | ) Case No. 08-0564-CV-W-ODS |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security | ) |
|         Defendant. | ) |

ORDER AND OPINION AFFIRMING COMMISSIONER'S FINAL DECISION
DENYING BENEFITS

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income. The Commissioner's decision is affirmed.

I. BACKGROUND

Plaintiff was born in 1962 and has completed high school. He has prior work experience as a warehouse worker, retail stock clerk, security guard, housekeeper/ cleaner, and cashier. Plaintiff filed his applications for benefits under Titles II and XVI of the Social Security Act on February 23, 2005, alleging a disability onset date of May 20, 2004, due to depression, anxiety, and post-traumatic stress. Plaintiff's claims were denied. In a decision on August 22, 2007, after a hearing, the Administrative Law Judge ("ALJ") found Plaintiff was not under a disability as defined in the Social Security Act. On June 26, 2008, the Appeals Council of the Social Security Administration denied Plaintiff's request for review. Therefore, the decision of the ALJ stands as the final decision of the Commissioner.

The ALJ found Plaintiff had the severe mental impairments of adjustment disorder with mixed disturbance of both emotions and conduct, borderline personality

disorder, and cocaine and methamphetamine abuse. He found that Plaintiff did not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ then found that Plaintiff has the residual functional capacity to perform all of his past relevant work and therefore, that he was not disabled as defined in the Social Security Act.

*A. Medical Records*

On July 18, 1997,[1] Plaintiff was referred to Keith L. Allen, Ph.D., for a psychological evaluation as part of a request by Plaintiff for vocational rehabilitation services. Dr. Allen noted that Plaintiff had adequate hygiene and grooming and was dressed appropriately. Plaintiff lived by himself in a house. He reported that he was raised by foster parents and that he was sexually abused by his foster father from age twelve to seventeen. From the age of seventeen to twenty-two he lived with his birth parents. Plaintiff had trouble with school due to a learning disability and had to repeat the first and eleventh grade. He reported that he abused drugs at times. In 1988 he received thirty days inpatient psychiatric treatment for "stress" while working two jobs.

Dr. Allen administered the WAIS-R. Plaintiff's scores placed him in the borderline intelligence classification. Plaintiff's verbal, written, math, and broad knowledge skills were between the fourth and eighth grade levels. On the Minnesota Multiphasic Personality Inventory ("MMPI"), Plaintiff's responses suggested a person who was anxious, depressed, and agitated. Dr. Allen observed that Plaintiff related in a spontaneous and friendly manner, that his mood was good, and that his speech was coherent and logical. Plaintiff had no difficulty attending to or participating in the exam procedures, there were no signs of mental confusion, and there were no indications of emotional distress. Plaintiff also showed no uncontrollable or unmanageable behaviors. Dr. Allen concluded that Plaintiff appeared to be a good candidate for rehabilitation services, but that he would have difficulty with activities that require average or better

---

[1] Medical records that pre-date Plaintiff's alleged disability onset of May 20, 2004 are relevant only to determine whether Plaintiff was disabled on or after May 20, 2004.

academic skills and would do better in performance related activities. He diagnosed reading disorder, generalized anxiety disorder, borderline intellectual functioning, and polysubstance abuse. R. 163-68.

Plaintiff received additional psychological testing on May 30, 2001. Plaintiff scored in the low average to average range on the WAIS-R. Ira Stramm, Ph.D., found that Plaintiff functioned in uneven ways, intellectually and emotionally. In some respects Plaintiff functioned like and adult and in others he functioned in a developmentally immature way. R. 562-63.

On April 9, 2002, Plaintiff saw Nallu Reddy, M.D., of Swope Parkway Health Center for mental treatment. Dr. Reddy prescribed the anti-depressant Celexa and diagnosed depression. R. 239-40. Plaintiff returned to Dr. Reddy every few months for medication checks. She later prescribed Vistaril for anxiety and Trazodone for sleep. R. 236, 238. On January 7, 2003, Plaintiff reported that the medication improved his mood and that the Vistaril helped his anxiety. Dr. Reddy diagnosed Plaintiff's Global Assessment of Functioning ("GAF") at 38. R. 233. On February 18, 2003, Plaintiff reported that he was "doing fine." Dr. Reddy stated Plaintiff's mood was improved, he showed appropriate affect, he denied any suicidal or homicidal ideation, psychosis or mania, and that he "[a]lways comes with a smiling face." R. 231.

On June 17, 2003, Plaintiff reported that he was stressed out by working seven days a week and that he had used methamphetamine recently. Dr. Reddy assessed major depression recurrent in full remission with a GAF of 40. R. 230. On October 14, 2003, Plaintiff reported that he had changed jobs and now got two days off a week. He reported that he was doing fine and was stable. Dr. Redding reported that Plaintiff's mood was normal with appropriate affect and assigned a GAF of 40. R. 229. On December 13, 2004, after Plaintiff's alleged disability onset date of May 20, 2004, Plaintiff returned to Dr. Reddy and reported that he was doing fine, but that he had a "relapse" six months ago and had gone through treatment and outpatient classes. Dr. Reddy observed Plaintiff's mood was normal with appropriate affect. She assessed major depression recurrent, mild and a GAF of 35. R. 228.

On December 22, 2004, Plaintiff went to Thompson Care Center, a residential

Case 4:08-cv-00564-ODS   Document 12   Filed 06/29/09   Page 3 of 11

facility. Plaintiff's initial intake notes state that Plaintiff was admitted from a Salvation Army Shelter. "He has no complaints. . . . He admits that he is homeless and wants to be [in] a facility during the winter months. [T]here are no problems." The report goes on to state that "[b]ecause of multiple medical and psychiatric disorders, this patient is unable to live alone and requires a living environment." R. 282.

On April 19, 2005, Plaintiff visited Dr. Reddy again. He reported that he was doing okay. Dr. Reddy observed that Plaintiff is "always smiling, talks very nicely, reports medication is doing okay." She diagnosed major depression, recurrent, mild and a GAF of 50. R. 501. On July 19, 2005, Plaintiff again reported that he was doing fine. His mood was normal with appropriate affect and he denied any suicidal/homicidal ideations or psychotic features. Dr. Reddy assessed a GAF of 40. R. 498.

On April 25, 2006, Plaintiff returned to Dr. Reddy and reported he was in treatment at Imani House, a substance abuse treatment facility, because he had relapsed on cocaine. He stated that stress at work and relationships caused him to use drugs, but that he wanted to "take care of it." Otherwise, he reported he was doing fine. Dr. Reddy observed Plaintiff's mood was normal with appropriate affect and that he was stable on his medication. She assessed a GAF of 50. R. 492.

On August 28, 2006, Dr. Reddy completed a Mental Assessment of Ability To Do Work-Related Activities. Dr. Reddy indicated that Plaintiff had a "poor" ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stress, function independently, and maintain attention/concentration. She also indicated that Plaintiff had a "poor" ability to understand, remember and carry out complex job instructions and detailed but not complex job instructions, but he had a "fair" ability to carry out simple job instructions. She reported that Plaintiff had a "good" ability to maintain his personal appearance, but a "poor" ability to behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. She stated that Plaintiff's depression would affect his work related activities to the same degree regardless of his substance abuse. R. 505-06.

On March 26, 2007, following the hearing, Plaintiff was seen by Ronald D.

Holzschuh, Ph.D., for an additional psychological evaluation at the request of the Administration.[2] Dr. Holzschuh observed that Plaintiff's appearance was good, he was cooperative, and that his speech was mildly inappropriate, in that many of the topics he discussed were rather unpleasant. Plaintiff reported enjoying going for walks, visiting the library, planting flowers, reading, fishing, and swimming. He reported feeling lonely. Dr. Holzschuh noted that Plaintiff's work records indicated he was currently employed at Church's Chicken, working 15-35 hours per week as a cashier. Plaintiff was well-oriented and manifested no significant pathological thinking. Intellectually, Plaintiff had a good vocabulary, fair fund of information, and fair common sense reasoning, abstract reasoning, and math skills. On the MMPI, Plaintiff's Validity Scales suggested he had a tendency to represent himself in a very unfavorable light, exaggerating his symptoms. The test did reveal indications of very poor psychological integration and a very naive, disturbed individual with severe depression with anxiety.

Dr. Holzschuh concluded that Plaintiff was able to understand and remember simple instructions, and probably more detailed instructions. He has fluctuations in attention, concentration, and cognitive persistence due to emotional instability. He has difficulty coping with significant changes in his environment, but some of this difficulty is contributed to by substance abuse. Dr. Holzschuh diagnosed cocaine abuse, in partial remission, adjustment disorder with mixed disturbance of both emotions and conduct, and borderline personality disorder. R. 556-57.

The same day, Dr. Holzschuh completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental). He indicated Plaintiff had no limitations in his ability to understand, remember, and carry out simple instructions; no limitations in the ability to make judgments on simple work-related decisions; mild limitations in his ability to understand, remember, and carry out complex instructions; and moderate limitations in his ability to make judgments on complex work-related decisions. He also found that

---

[2] At the close of the hearing before the ALJ on November 21, 2006, Plaintiff's attorney asked the ALJ to consider obtaining an additional psychiatric examination for Plaintiff before closing the record because "the treating records from his psychiatrist . . . weren't very comprehensive." R. 605.

5

Plaintiff was mildly limited in his ability to interact appropriately with the public, supervisors, co-workers, and to respond appropriately to usual work situations and to changes in a routine work setting. Dr. Holzschuh also stated that Plaintiff's impairments would be improved if he stopped abusing drugs. R. 558-60.

   *B. Hearing Testimony*

Plaintiff testified that he was currently working as a cashier at Church's Chicken since August of 2006. He stated that he worked approximately 20-25 hours per week. He testified that he tried to work more hours, but he was mentally unable to perform greater than part-time work. Plaintiff stated that occasionally he has problems dealing with customers at work and that his reading disability sometimes causes him to hit the wrong key on the cash register. Plaintiff testified that he had been residing at Thompson Care Center for about a year, a residential facility for people with mental disabilities. He stated that he did not feel stable enough to leave the facility. He attends support groups for his addictions several times each week. He stated that he had not used drugs in several months, but had used them since the time he alleged he became disabled.

Plaintiff testified that he saw Dr. Reddy to get his medication and that she hadn't changed the dosage or type of medication since he first sought treatment. He stated that the medication helps his depression, but sometimes he still gets depressed. He states that he tries not to let it control him like it did in the past, but it makes it hard for him to get out of bed, go to work, and deal with society. However, he no longer entertains thoughts of harming himself. Plaintiff testified that he cannot carry on full time work because, at times, he has too much energy that he can't control. Plaintiff goes to work, the store, church, and his support group meetings. He testified that he has a few friends at Thompson Care Center, and sometimes they go out to eat or to the movies.

A Vocational Expert ("VE") also testified at the hearing. The ALJ asked the VE to assume a hypothetical person of Plaintiff's age, education, and past work experience, with no exertional limitations, and with the ability to follow simple, undetailed

6

Case 4:08-cv-00564-ODS   Document 12   Filed 06/29/09   Page 6 of 11

instructions. The VE stated that such a person could perform all of Plaintiff's past work as a warehouse worker, retail stock clerk, security guard, housekeeper/ cleaner, and cashier. R. 600-01. On cross-examination by Plaintiff's attorney, the VE stated that if Plaintiff was as limited as Dr. Reddy found him to be on her Medical Source Statement, finding his ability to be "poor" on eight different occupational measures, then he would be precluded from all work. R. 604.

### C. The ALJ's Decision

The ALJ found that since his alleged disability onset date, Plaintiff had not worked sufficient hours per week to have engaged in substantial gainful activity. He found Plaintiff to have the severe impairments of adjustment disorder with mixed disturbance of both emotions and conduct, borderline personality disorder, and drug abuse. Plaintiff did not have any severe physical impairments. The ALJ discounted the opinion of Plaintiff's treating psychiatrist, Dr. Reddy, and Plaintiff's hearing testimony, in finding Plaintiff to have the Residual Functional Capacity ("RFC") to perform work that required following simple and low-end detailed instruction at all exertional levels. He found Plaintiff's RFC allowed him to perform all of his past relevant work, and therefore, that Plaintiff was not disabled.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a

7

mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

   *A. Plaintiff's Credibility*

The ALJ found Plaintiff's testimony that his mental problems precluded all full-time work to be not fully credible. The critical issue is not whether Plaintiff experiences symptoms from his mental disorders, but rather, whether the symptoms are credible to the degree that they prevent him from performing substantial gainful activity. See McGinnis v. Chater, 74 F.3d 873, 874 (8th Cir. 1996). The familiar standard for analyzing a claimant's subjective complaints is set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted):

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
>   1. The claimant's daily activities;
>   2. the duration, frequency and intensity of the pain
>   3. precipitating and aggravating factors;
>   4. dosage, effectiveness and side effects of medication;
>   5. functional restrictions.

8

> The adjudicator is not free to accept or reject the claimant's
> subjective complaints solely on the basis of personal
> observations. Subjective complaints may be discounted if
> there are inconsistencies in the evidence as a whole.

739 F.2d at 1322.

In discounting Plaintiff's subjective complaints, the ALJ first found that the objective medical evidence showed that Plaintiff's condition was well-controlled with medication and therefore, did not support Plaintiff's testimony. The ALJ also considered the fact that Plaintiff had been working on a part-time basis. See Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005) ("Working generally demonstrates an ability to perform a substantial gainful activity."). Additionally, in assessing Plaintiff's credibility the ALJ discussed the third party functional report submitted by Plaintiff's friend and co-worker on March 15, 2005, in which he stated that Plaintiff was able to follow spoken instructions, handled change in routine easily, obeyed the rules, and got along well with authority figures. See R. 78-84. The ALJ also found Plaintiff's daily activities did not support Plaintiff's allegations of debilitating mental impairment. Specifically, Plaintiff attends weekly meetings, goes to the store, visits the library, takes public transportation, and goes to movies and restaurants with friends.

Where the ALJ specifically explains his reasons for discrediting a plaintiff's testimony, the Court normally defers to the ALJ's determination. See Russel v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991). Here, the ALJ explicitly provided several factors that detracted from Plaintiff's credibility. The Court therefore concludes that the ALJ's credibility determination is supported by substantial evidence on the record as a whole.

### B. Discounting Opinion of Treating Physician

In concluding that Plaintiff could perform his past relevant work, the ALJ gave little weight to the opinion of Dr. Reddy, Plaintiff's treating physician. Generally speaking, a treating physician's opinion is entitled to deference. This general rule is not ironclad; a treating physician's opinion may be disregarded if it is unsupported by clinical or other data or is contrary to the weight of the remaining evidence in the record. E.g.,

9

Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996). The ALJ found that Dr. Reddy's mental assessment of ability to do work-related activities was not reliable, because it was contradicted by Dr. Reddy's own treatment notes. Specifically, Dr. Reddy's notes consistently described Plaintiff as showing appropriate affect and mood stability. She noted Plaintiff's medication was providing him with relief and was causing no side-effects. Dr. Reddy consistently diagnosed Plaintiff with mild recurrent depression that was stable or in remission on medication. The Court also notes that the fluctuating GAF scores assigned by Dr. Reddy do not appear to correspond to her observations or to Plaintiff's subjective reports at their meetings. These records did not support Dr. Reddy's assessment that Plaintiff had a poor ability to function in the work-place.[3] Accordingly, the ALJ did not err in giving little weight to the opinion of Dr. Reddy.

*C. Past Relevant Work*

Plaintiff argues that the ALJ's conclusion that Plaintiff could perform his past relevant work was not supported by substantial evidence on the record as a whole. However, in formulating Plaintiff's RFC, the ALJ considered all of the credible evidence of record. Specifically, the ALJ considered the psychological evaluations performed by Dr. Allen, Dr. Stamm, and Dr. Holzschuh. While finding Plaintiff to have borderline intellectual functioning, generalized anxiety disorder, and a reading disorder, Dr. Allen concluded that Plaintiff appeared to be a "good candidate for rehabilitation services." Dr. Allen stated that Plaintiff would have difficulty with activities requiring academic skills. The ALJ incorporated this limitation into Plaintiff's RFC in limiting Plaintiff to work that required following only simple and low-end detailed instructions. Dr. Stamm found Plaintiff to have low average to average intelligence, and did not provide a diagnosis for Plaintiff. While diagnosing Plaintiff with adjustment disorder and borderline personality disorder, Dr. Holzschuh stated that Plaintiff's limitations would not affect his ability to understand, remember, and carry out simple instructions and make judgments on

---

[3] The Court notes that Plaintiff's counsel also admits that Dr. Reddy's treatment notes "weren't very comprehensive." R. 605.

10

simple work-related decisions. However, he found Plaintiff was mildly limited in his ability to handle complex instructions, which the ALJ included in Plaintiff's RFC.

The ALJ presented Plaintiff's RFC to the VE in the form of a hypothetical question. The VE testified that Plaintiff's past work would not be precluded by his limitations. Accordingly, the ALJ's conclusion that Plaintiff could perform his past relevant work, and therefore, that he is not disabled, is supported by substantial evidence on the record as a whole.

### III.  CONCLUSION

The Commissioner's decision is supported by substantial evidence in the record as a whole, so his decision denying benefits is affirmed.

IT IS SO ORDERED.


DATE: June 29, 2009

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT

11